**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amber House,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Brovitz Group, et al.,<br><br>　　　　Defendants. | No. CV-17-01456-PHX-DLR<br><br>Consolidated with:<br>Case No. CV-17-02668-PHX-DLR<br>Case No. CV-18-01462-PHX-DLR<br><br>**ORDER** |

Before the Court are the parties' cross-motions for summary judgment (Docs. 45, 53), which are fully briefed.[1] For the following reasons, Plaintiff Amber House's motion is denied, and Defendants Defendant Desert Massage Companies, Inc. ("DMC") and The Brovitz Group's ("Brovitz") motion is granted.

## **BACKGROUND**

DMC operates 13 Massage Envy Spa Clinics across Arizona, including a clinic in Ahwatukee. Brovitz is a shareholder of DMC. House, a black woman, was employed at DMC's Ahwatukee Massage Envy Clinic ("Clinic") as an esthetician.

On September 6, 2016, House raised concerns with Sasha Alba, the Clinic's General Manager, about Cynthia Larson, another Clinic employee. Specifically, House alleged that Larson, in an effort to sabotage House, engaged in inappropriate gossip and

---

[1] After reviewing the briefing and record, the Court finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

spread unfounded and slanderous accusations. House's concerns, which were memorialized in an email she sent to Alba, did not include allegations that Larson's behavior was motivated by racial animus.

On September 9, 2016, Alba organized a meeting between Larson and House. Also present at the meeting was Ashley Mosono, Director of Operations and Alba's direct supervisor. During this group meeting House did not raise concerns about racial discrimination or the existence of racial animus in the workplace.

On October 19, 2016, House emailed Alba with concerns over her work schedule. According to House, after the September 9 meeting her regular customers were being diverted to other Clinic estheticians and her Saturday shifts were reduced. House also questioned whether these changes were retaliation for her September 6 email. Alba responded, assuring House that these incidents were unrelated to the September 6 complaint, clarifying that her reduction in Saturday shifts was a mistake that would be promptly remedied, and requesting further information concerning diverted clients in order for Alba to properly investigate the matter. Despite Alba's assurances to the contrary, House sent a second email to Alba on October 19, in which she stated that she suspected both incidents were "racially motivated," but that she did not "know for a fact."

On October 25, 2016, Alba met with House and Shawn Adams, a human resources staff member. During the meeting Houses stated that she did not think Alba was retaliating against her. Nor did House identify any DMC employee she believed was retaliating against her.

Several months later, on April 6, 2017, House submitted an EEOC intake questionnaire, alleging claims against Brovitz. House then filed an EEOC charge for discrimination against the company, alleging racial discrimination and retaliation. On May 11, 2017, House filed suit in this matter.

On August 19, 2017, House allegedly injured her hand using a steamer while performing a facial at work. House reported her injury to the Lead Sales Associate, but returned to work and did not seek any medical treatment for her alleged injury.

On August 20, 2017, Monica McNatt, Assistant General Manager of the Clinic, moved House's handbag in order to access employee mailboxes. According to McNatt, later that day House informed her that she had a loaded gun in her purse and that McNatt should be careful moving her stuff. McNatt reported this conversation to Alba.

On August 23, 2017, Alba discussed McNatt's report with House. House denied saying that she had a gun in her purse, but admitted that she sometimes carries a gun in her purse, she has a concealed carry license, and she intended to start bringing a gun to work. House also alleged that other employees were bringing concealed weapons to work, but refused to divulge the identity of such employees. Alba instructed House that DMC prohibits firearms on Clinic premises, and notified her that bringing a firearm to work would be cause for termination.

Upon learning that other Clinic employees were allegedly bringing concealed weapons to work, Alba and Tiffany Harris, DMC's Chief Operating Officer, initiated an investigation and interviewed all Clinic employees. On August 26, 2017, as part of the investigation, Alba and Harris interviewed House. According to Alba, House changed her story during the interview, denying that she even owned a gun. On August 29, 2017, DMC terminated House, citing safety concerns, House's inconsistent statements regarding the August 23 incident, and her refusal to aid in the investigation by identifying other employees bringing concealed weapons to work.

On September 25, 2017, House filed her amended complaint, alleging that Defendants: (i) violated of Title VII of the Civil Rights Act of 1964 by discriminating against her on account of race; (ii) violated Title VII by retaliating against her for engaging in protected activity; (iii) violated 42 U.S.C. § 1981 by engaging in racial discrimination in enforcing her employment contract; (iv) violated the Lilly Ledbetter Fair Pay Act of 2009 ("FPA") by paying House less than co-workers of a different race; (v) violated the American's with Disabilities Act of 1990 ("ADA");[2] and (vi) acted negligently in providing "faulty equipment" in the workplace. (Doc. 20 at 26-29.)

---

[2] On July 3, 2018, the Court granted House's motion for voluntary dismissal of her ADA claim. (Doc. 59.)

This action was consolidated with *House v. Brovitz Group, et al.*, No. 17-CV-1456-DLR on September 14, 2017, and *House v. Brovitz Group Inc. et al.*, No. 18-CV-01462-DJH on September 10, 2018, because these matters contained substantially similar allegations.

On February 28, 2018, House moved for summary judgment on all claims (Doc. 45), and on June 15, 2018, Defendants cross-moved for summary judgment on House's claims (Doc. 53).

## **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the non-movant's opposition fails to cite specifically to evidentiary

materials, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

## DISCUSSION

### I. Disparate Treatment and Retaliation

House raises two claims under Title VII, which prohibits employers from discriminating against employees based on race, and from retaliating against employees for engaging in certain protected activities. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3. House also raises a racial discrimination claim in violation of § 1981. House claims that Defendants violated Title VII and § 1981 by subjecting her to disparate treatment on account of her race and retaliating against her for submitting a complaint against her co-worker. (Doc. 20 at 27.)

Title VII and § 1981 claims are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007). Under this framework, the plaintiff bears the initial burden of demonstrating a prima facie case of racial discrimination or retaliation. To establish a prima facie case of disparate treatment, a plaintiff must show that she: (1) is a member of a protected class, (2) is qualified for her job, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside her protected class. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of unlawful retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) she thereafter was subjected by her employer to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even

need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124.

If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory [or non-retaliatory] reason for the challenged action." *Id.* at 1123-24. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination or retaliation, "either directly by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (internal quotation and citation omitted). A plaintiff "cannot simply show that the employer's decision was wrong, mistaken, or unwise." *Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation and citation omitted). Instead, she must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* A plaintiff's evidence on this point "must be both specific and substantial to overcome the legitimate reasons put forth by," the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

Defendants contend that they are entitled to summary judgment on House's disparate treatment and retaliation claims because House cannot establish that she suffered an adverse employment action. An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment. *See Chuang*, 225 F.3d at 1126.

As an initial matter, House's termination cannot form the basis of her current discrimination and retaliation claims because her EEOC charge did not include

allegations related to her termination. Federal courts lack jurisdiction over Title VII claims until claimants have exhausted their EEOC administrative remedies. "Incidents of discrimination [or retaliation] not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green v. L.A. Cty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Trus*t, 732 F.2d 726, 729 (9th Cir.1984)). In determining whether the new claim is like or reasonably related, the Court must examine the scope of both the EEOC charge and the EEOC investigation and determine whether the original EEOC investigation would have encompassed the additional charges made in the complaint but not included in the EEOC charge itself. *Id.* at 1476. Here, the EEOC issued House a right to sue letter three months prior to her termination, meaning House's termination clearly was not included in the EEOC's charge. Indeed, House did not file with the EEOC a charge related to her termination until a month before filing her summary judgment motion in this action.[3] The Court therefore is without jurisdiction to consider any claim that House was terminated for discriminatory or retaliatory reasons. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

Aside from her termination, House alleges as the basis for her discrimination and retaliation claims that she was (i) excluded from a promotional event; (ii) deprived of a seaweed mask; and (iii) prevented from seeking medical attention for an injury. The undisputed evidence, however, belies House's characterization of these incidents. First, House was unable to participate in the promotional event because she was working that day. Second, the undisputed evidence shows that House was not denied a seaweed mask. Rather, these supplies were of a limited quantity and were to be shared by the estheticians until the Clinic received a new shipment. Lastly, there is no evidence that House was deprived of medical attention for her workplace injury. Instead, House informed her

---

[3] House attached with her complaint in the now-consolidated case No. 18-CV-1462 an EEOC charge alleging wrongful termination by Defendants that was filed with the EEOC on January 25, 2018. House did not proffer an EEOC notice of dismissal or right-to-sue letter for this charge.

- 7 -

supervisor that she was able to return to work and never sought medical attention for the alleged burn.

Even assuming that House's allegations had evidentiary support and otherwise constituted adverse employment actions, House has proffered no evidence that these actions were causally related to her workplace complaint. Nor has House offered evidence demonstrating that Defendants' legitimate, non-discriminatory and non-retaliatory explanations for these actions are pretextual. Defendants therefore are entitled to summary judgment on House's discrimination and retaliation claims.

**II. FPA**

House claims that that she received a lower base pay because of her race and despite her superior work experience. (Doc. 20 at 27.) The FPA, however, was intended to reverse the Supreme Court's ruling in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), by extending the statute of limitations for pre-existing anti-discrimination statutes, not to create an independent cause of action. *See, e.g.*, *Boyar v. City of New York*, No. 10-CV-65(HB), 2010 WL 4345737 (S.D. N.Y. 2010); Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, § 2(1)-(2), 123 Stat. 5 (2009). Although House may seek damages for discriminatory wage practices, such an action must arise under another statute. For instance, Title VII makes it unlawful for "an employer . . . to discriminate against any individual with respect to his compensation . . . because of such individual's race . . . ." § 2000e–2(a)(1).[4]

For purposes of this order, then, the Court will construe House's wage discrimination claim liberally as one brought under Title VII. To state a prima facie case of wage discrimination under Title VII, House must show that: (1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside her

---

[4] The FPA amends Title VII to state, in pertinent part: "[A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title. . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e–5(e)(3)(A). The FPA merely deems each paycheck issued pursuant to a discriminatory pay structure an independent, actionable employment practice under Title VII.

protected class received higher compensation; and (4) she was qualified to receive a higher wage. *Walker v. Fulton Cty. Sch. Dist.*, 624 Fed. App'x 683, 686 (11th Cir. 2015). Wage discrimination claims under Title VII are governed by the *McDonell Douglas* burden-shifting analysis. In race-based wage discrimination cases, the plaintiff must present a comparator who received higher compensation in order to establish a prima facie case. *Id.*

House offers two comparators: Cynthia Larson and Jennifer Swanson. (Doc. 45 at 3.) With respect to House's prima facie case, Defendants argue only that House has not identified valid comparators. Specifically, Defendants contend that House cannot satisfy the third element of her prima facie case because Cynthia Larson and Jennifer Swanson, the only two comparators House identifies, are not similarly situated to House. The Court agrees that Larson is not an appropriate comparator because her job responsibilities are not substantially similar to House's. For instance, in addition to her duties as an aesthetician, Larson provided training and education to other Clinic staff members. *See Hooper v. Total Sys. Servs., Inc.*, 799 F. Supp. 2d 1350, 1364 (M.D. Ga. 2011) (explaining that the plaintiff cannot rely "merely on a comparison of generic job titles" and must point to evidence "regarding the actual job functions and the skill and effort required to perform those functions"). Swanson, however, is an appropriate comparator. Swanson, a Caucasian, works as an esthetician, has substantially similar job responsibilities, and makes $16.75 per hour, 25 cents more per hour than House. (Doc. 48-1 at 4, 313.)

Because House established a prima facie case of wage discrimination, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the pay disparity. Defendants have done so. Specifically, Defendants contend the minimal difference between Swanson's and House's hourly wage is commensurate with Swanson's longer tenure with the company. Swanson has been with the company for over a year longer than House. *See Parker v. Arizona*, No. 08-CV-656-TUC-AWT, 2013 WL 3286414, at *4 (D. Ariz. June 28, 2013) (noting that Title VII incorporates the Equal

1 Pay Act's affirmative defenses, including seniority based pay). House offers no specific and substantial evidence rebutting this legitimate, non-discriminatory rationale for her difference in pay. *Aragon*, 292 F.3d at 659. Defendants therefore are entitled to summary judgment on this claim.

### III. Negligence

House alleges that she suffered workplace injury due to Defendants' negligence in providing her with "faulty equipment." (Doc. 20 at 29.) Defendants argue that House's negligence claim fails as a matter of law because the Arizona workers' compensation system provides the exclusive remedy for her alleged injury. (Doc. 53 at 13.) The Court agrees.

The Arizona workers' compensation statute provides the exclusive remedy for injuries sustained by an employee caused by an employer's negligence. A.R.S. § 23-1022(A); *See Irvin Investors, Inc. v. Superior Ct.*, 800 P.2d 979, 981-82 (Ariz. Ct. App. 1990) (holding that the plaintiff's negligence claims against her former employer were barred by Arizona's workers' compensation law, "which provides the exclusive remedy for workers injured on the job").

Because House's negligence claim alleges that she was injured as a result of Defendants negligently providing faulty workplace equipment, House must pursue her remedies through the Arizona's workers' compensation scheme unless an exception to the workers' compensation scheme applies. § 23-1022(A). House does not argue, nor does the Court find, that any such exception applies. *See Eichenberger v. Falcon Air Exp. Inc.*, No. 14-CV-168-PHX-DGC, 2014 WL 3819355, at *4-5 (D. Ariz. Aug. 4, 2014) (finding that the willful misconduct exception to Arizona's workers' compensation scheme does not apply to claims based on negligence). Defendants therefore are entitled to summary judgment on this claim. Accordingly,

//
//
//

**IT IS ORDERED** that House's motion for summary judgment (Doc. 45) is **DENIED** and Defendants' cross-motion for summary judgment (Doc. 53) is **GRANTED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 11th day of September, 2018.

Douglas L. Rayes
United States District Judge